**LAW OFFICES OF ART HOOMIRATANA**
**ART HOOMIRATANA, ESQ. (CA SBN 247253)**
**Email: arthoomiratana@realestatelawcenter.org**
**REALESTATELAWCENTER.ORG**
**Email: litigationsupport@realestatelawcenter.org**
750 East Green Street Suite 333
Pasadena, California 91101
Telephone: (888) 688-4770
Facsimile: (888) 848-4570

Attorney for Plaintiff,
Keni Meyer

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENI MEYER | Case No. 3:13-cv-03727-NC |
| Plaintiff, | State Court Case No: SCV253903 |
| vs. | |
| | PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS |
| WELLS FARGO, NATIONAL ASSOCIATION; and DOES 1-10, Inclusive, | DATE: December 5, 2013<br>TIME: 8 a.m.<br>PLACE: San Francisco Courthouse |
| Defendants. | Courtroom 8<br>450 Golden Gate Avenue<br>San Francisco, CA 94102 |
| | [Hon. William Alsup] |

TO THE HONORABLE JUDGE WILLIAM ALSUP, ALL PARTIES AND THEIR

RESPECTIVE ATTORNEYS OF RECORD HEREIN:

1

Plaintiff by and through his attorney of record hereby opposes Defendant's Motion to Dismiss.

### FACTUAL BACKGROUND ALLEGATIONS

Plaintiff purchased her home on November 21, 2007 for $650,000.00. After a $130,000.00 down payment, Plaintiff obtained a mortgage in the sum of $520,000.00 from WORLD SAVINGS BANK, FSB with a monthly mortgage payment amount of $2,932.00. The loan was a negative amortized adjustable rate mortgage.

Plaintiff alleges that the Deed of Trust held by WORLD SAVINGS BANK, FSB was assumed by WHACHOVIA, and later assumed by Defendant WELLS FARGO.

Plaintiff is a responsible homeowner who faithfully made her monthly mortgage payments on time each and every month from the date of purchase on November 21, 2007 until March 2010, the time of her last payment.

Plaintiff, in early 2010, experienced significant hardship that negatively impacted her financial situation and ability to stay current on her mortgage. Plaintiff is self-employed in the landscape industry and with the housing boom in the early and mid-2000's, she enjoyed a lucrative business. However, the recent recession and collapse of the housing market drastically reduced her customers and her cash flow was severely negatively impacted.

In 2009, the economy had caused Plaintiff home to become "under water," at the same time her aforementioned hardship began. Prior to falling behind on her mortgage payment on March 2010, knowing she was in danger of imminent default, Plaintiff requested mortgage assistance from WACHOVIA. WACHOVIA denied any assistance because Plaintiff was current, even though completely unable to make her monthly payment. WACHOVIA refused to

1    recognize that Plaintiff was in imminent default and in violation of the HAMP an FDIC

2    guidelines refused to offer mandatory assistance.

3          On or about March 2010, Plaintiff was unable to make her current monthly mortgage

4    payment and immediately requested mortgage assistance from WACHOVIA.  Numerous

5    WACHOVIA employees promised Plaintiff that they would review her for a modification and

6    throughout 2010 and 2011 repeatedly insisted Plaintiff submit additional financial documentation

7

8    so a modified payment could be calculated.  Further, during these two years WACHOVIA

9    regularly requested the same information over and over again.  No matter how many times the

10   requests were repeated, Plaintiff always immediately submitted the documents.  WACHOVIA

11   continuously assigned different specialists to Plaintiff's application, yet they were all unanimous

12

13   in stating that no foreclosure activity would occur until a decision was made on Plaintiff's

14   application for mortgage assistance.

15         WACHOVIA employees spent nearly two years requesting repeated submissions,

16   requested additional documents and often requested the same documents repeatedly, all the while

17

18   promising that a modification would be forthcoming.  In fact, WACHOVIA wrote Plaintiff on

19   September 17, 2010 "…we will continue the foreclosure process while we evaluate your loan for

20   HAMP, no further foreclosure sale will be conducted and you will not lose your home during the

21   HAMP evaluation."

22

23         On October 5, 2010, WACHOVIA wrote Plaintiff that they had declined her for HAMP,

24   and instructed her to contact WACHOVIA to explore "in-house" alternatives.  On December 14,

25   2010, WACHOVIA employee Sharon Zuniga wrote Plaintiff stating her application was back on

26   review for HAMP, "however, no foreclosure sale will be conducted and you will not lose your

27   home during the HAMP evaluation."

28

In 2011, WELLS FARGO took over the loan from WACHOVIA. On or about November 5, 2011, still desperate to save her home and anxious to begin making a payment, Plaintiff continued to call WELLS FARGO and resubmitted a Request for Mortgage Assistance. WELLS FARGO employee, Christopher Heil, wrote Plaintiff a March 3, 2012 letter, representing that they were doing their own HAMP review and "during the review process your loan will not be referred to foreclosure." Once again, Numerous WELLS FARGO employees, including Christopher L Heil, the assigned Home preservation Specialist to her file, promised Plaintiff that during the review process, her loan would not be referred to foreclosure.

From March 3, 2012 through the present date, WELLS FARGO never concluded their review. In fact, during this time period, WELLS FARGO continued to verify in writing that Christopher Heil is Plaintiff's primary contact, and in September 2012, wrote Plaintiff a letter, stating that " we received the documents you sent us to move forward with your request for mortgage assistance…our home preservation team will carefully review what you submitted." The above letters from WELLS FARGO prove that Christopher Heil had Plaintiff's application under review during 2011 yet, other WELLS FARGO employees recorded a Notice of Default on December 5, 2011, at a time when WELLS FARGO promised "we received the documents you sent us to move forward with your request for mortgage assistance…our home preservation team will carefully review what you submitted."

The above is glaring evidence that WELLS FARGO breached and violated its promise to not conduct foreclosure activity until it completed its review. Hence, this conduct by WELLS FARGO was extremely confusing to Plaintiff; it was contradictory, negligent and a clear case of the right had not knowing what the left hand is doing. The Notice of Default recorded on December 5, 2011 was done at a time when WELLS FARGO specifically promised that no

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS

foreclosure activity would occur and that a modification was "right around the corner." WELLS FARGO's conduct continued to be in bad faith because in December 2011, other employees were requesting Plaintiff resubmit the same documentation numerous times.  Thus, the recording, on December 5, 2011, of a Notice of Default, was in conflict with WELLS FARGO's promises that no foreclosure activity would occur while under review, in violation of HAMP and FDIC guidelines, and in violation of California statues.

On or about March 3, 2012, Christopher L. Heil, sent Plaintiff another letter, stating that WELLS FARGO had received her request for assistance under the Affordable Modification Program; that the application documents submitted had been received and were in the process of being reviewed; that a decision would be made within 30 days; that during the review process, their loan would not be referred to foreclosure; and that a foreclosure sale would not be held and that she would not lose their home during this time period.

Contrary to the promises in the above described March 3, 2012 letter, other   WELLS FARGO employees recorded a Notice of Trustee Sale on March 2, 2012.  Thus, Plaintiff is continuously lied to and given false information.  WELLS FARGO led Plaintiff to believe that there was no foreclosure activity occurring, yet, in contradiction to those promises by Christopher Heil and others, different employees were recording a Notice of Default and a Notice of Trustee's Sale.  The horror story continues by WELLS FARGO employee Christopher Heil sending Plaintiff a letter dated April 3, 2013 stating " to help expedite the (review) process, please fax your documents and information to…if you prefer to send the documents by mail, please mail to …".  Thus, this is more glaring evidence that Plaintiff was still under review as of April 2013, which clearly shows the Notice of Trustee's Sale recorded a year earlier while Plaintiff's application was pending, violated the prohibition of dual tracking and WELLS

FARGO's numerous written promises that no foreclosure activity would occur during the review.

This confusing and contradictory behavior of WELLS FARGO continued through April 2013.  WELLS FARGO, in a clear example of dual-tracking, wrote Plaintiff a letter dated April 3, 2013, confirming Christopher Heil was still Plaintiff's Home Prevention Specialist and was reviewing Plaintiff for mortgage assistance.  Then, in a totally contrary move, WELLS FARGO recorded a Notice of Trustee Sale on April 8, 2013 scheduling a sale date of May 1, 2013.  Obviously, the WELLS FARGO employees who did this recording on April 8, 2013, had to have been unaware of the April 3, 2013 letter from Christopher Heil.

Again, WELLS FARGO's conduct continues to be a case of the right hand not knowing what the left hand is doing.  Throughout 2012 and 2013, WELLS FARGO knew the intimate details of Plaintiff's income and that her hardship was over, yet they refused their promised modification, never made a decision on her application as evidenced by their April 3, 2013 letter, and have scheduled a sale date for May 1, 2013.  With WELLS FARGO employees verifying that her income was sufficient to meet the HAMP criteria, a factual basis did exist for Plaintiff's reliance on their promises that a modification was forthcoming and that there would be no foreclosure until a decision was made.

Plaintiff moved backwards and forwards along the path to foreclosure; sometimes in review, sometimes out of review, sometimes with a sale date, sometimes without a sale date, all based on the whims of whichever WELLS FARGO employee that she was speaking to at the time.  The reviews have been delayed and stalled while sale dates were set between March 2012 and May 1, 2013, during the same time that no foreclosure activity could legally occur and during which time WELLS FARGO promised there would be no foreclosure activity.  Hence,

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS

WELLS FARGO clearly demonstrated that "their left hand does not know what their right hand is doing." WELLS FARGO knew from Plaintiff's numerous submissions that she could afford a fair and reasonable payment as her income met the qualifications for a HAMP, or "In-House" modification. In addition to this, WELLS FARGO represented to Plaintiff that they had the ability to modify her loan, however, their stalling caused over three years of arrears to accumulate.

Plaintiff has been the subject of gross-bad-faith conduct and been given the extreme run-around. WELLS FARGO knew very well Plaintiff's income qualified under HAMP and yet breached their promises of a permanent modification. More importantly, the over three years of arrears would not exist had WELLS FARGO followed through on their promises and representations of mortgage relief. The duty of WELLS FARGO to offer their promised relief was in accordance with their statutory and contractual obligations under the HAMP guidelines, the SPA contract with the U.S. Treasury, FDIC directives, and relevant California Statutes.

California Civil Code §2923.5 requires that, at least 30 days prior to filing a Notice of Default, WELLS FARGO must have contacted the borrower to explore options to avoid foreclosure. Since WELLS FARGO's Notice of Default was recorded on December 5, 2011, they were required by statute to contact Plaintiff at least thirty days prior, on or before November 5, 2011. Letters from WELLS FARGO, namely from Employee Christopher Heil, indicated that as of March 3, 2012 Plaintiff's application was being reviewed. Since Plaintiff's application was under review and no decision made, the recording of the Notice of Default on December 5, 2011 was unlawful.

Also, California Civil Code §2923.6 requires WELLS FARGO to provide the homeowner with a "workout" to prevent foreclosure, if one is available. WELLS FARGO knew

very well that Plaintiff's hardship had ended and her monthly income ad returned to a level that met the HAMP guidelines, yet no trial plan or permanent modification was provided.  WELLS FARGO chose to violate the statute instead of offering Plaintiff a modification.

In addition, California Civil Code §2923.7 requires that a decision on mortgage assistance be made before recording a Notice of Default.  WELLS FARGO did not make and has not to date made, a decision on Plaintiff's pending request for assistance.

## LEGAL STANDARD FOR MOTION TO DISMISS

A Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint.  The issue on a motion to dismiss for failure to state a claim is not whether the claimant will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims asserted. Gilligan v. Jamco Dev. Corp., 108 F.3d 246, 249 (9th Cir. 1997).

When evaluating a Rule 12(b)(6)  motion, the district court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party.  Moyo v. Gomez, 32 F.3d 1382, 1984 (9th Cir. 1994). Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires only a short and plain statement of the claim showing that the pleader is entitled to relief. FED. R. CIV. P. 8(a)(2).  Dismissal of a complaint for failure to state a claim is not proper where a Plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007).

In keeping with this liberal pleading standard, the District Court should grant the Plaintiffs leave to amend if the Complaint can possibly be cured by additional factual allegations. Doe v. United States, 58 F. 3d 494, 497 (9th Cir. 1995).

1

2

## PLAINTIFFS' CLAIM FOR BREACH OF CONTRACT

3

## THIRD PARTY BENEFICIARY IS VALID

4

Plaintiff has a strong case in prevailing against Defendant for breach of the HAMP and

5

6

FDIC directives, as third party beneficiaries.

7

Courts have long held that:

8

"To qualify as an intended beneficiary, the third party must show that the contract
reflects the express or implied intention of the parties to the contract to benefit the

9

third party.  Although intended beneficiaries need not be specifically or
individually identified in the contract, they still must fall within a class clearly

10

intended by the parties to benefit from the contract." County of Santa Clara v.

11

Astra USA, Inc. 588 F.3d 1237, 1243 (9th Cir, 2009), Marques v. Wells Fargo
Home Mortgage Inc., 2010 U.S. Dist. LEXIS 81879.

12

13

The Marques opinion granted a homeowner third party beneficiary status on facts that are

14

on all fours with the case at bar. This holding is consistent with all cases interpreting California

15

Civil Code Section 1559, allowing for an intended beneficiary to sue for breach of contract.

16

Plaintiff requests this court deny the request for dismissal.  First, any pleading defects can be

17

cured by allowing Plaintiffs' leave to amend. Further, to grant the dismissal, it would be sending

18

19

a message that Servicers and Lenders can "bait and switch" homeowners by inducing them to

20

pay as much as they can persuade them to pay during "trial plan periods," and then ignore their

21

obligations in their Servicer Participation Agreement (SPA) contracts.  Moreover, it would be

22

allowing them to violate Home Affordable Modification Program (HAMP) and FDIC directives

23

24

without any consequences, specifically addressed in Marques.

25

There can be no doubt that the specific language in the SPA contract, Defendants signed

26

with the U.S. Treasury Department makes any homeowner whose loan is serviced by

27

DEFENDANT an intended beneficiary, because its intent is to "…offer assistance to as many as

28

7 to 9 million homeowners, making their mortgages more affordable and helping to prevent the destructive impact of foreclosures on families, communities and the national economy."

Plaintiff argues that California Civil Code Section 2923.6 allows their complaint to withstand this motion.  This code section states that "it is the intent of the Legislature that the mortgagee, beneficiary, or authorized agents offer the borrower a loan modification or workout plan if such a modification or plan is consistent with its contractual or other authority.  HAMP, FDIC directives, and the Defendant's SPA provide the foundation to enforce this statute; thus, allowing Plaintiffs to have their day in court.

In contradiction and in contrast to the cases cited by Defendants that lenders cannot be sued for HAMP violation, the Astra and Marques' courts stated a distinct difference that HAMP has over other types of government contracts.  This distinction is that the SPA contracts and HAMP guidelines specifically state requesting homeowners are the intended beneficiaries.  The sole purpose of these contracts and programs are to provide homeowners with relief because the banks accepted billions of dollars from the Troubled Asset Relief Program (TARP).

Therefore, Plaintiffs' cause of action is proper and Defendant's Motion to Dismiss should be denied.

### Plaintiffs Have a Valid Claim for Fraud

Constructive fraud arises: 1. In any breach of duty which, without an actually fraudulent intent, gains an advantage to the person in fault, or any one claiming under him, by misleading another to his prejudice, or to the prejudice of any one claiming under him; or,  2. In any such act or omission as the law specially declares to be fraudulent, without respect to actual fraud.  Civil Code section 1573.

Defendant told Plaintiffs that if they submitted their financial documents, it would review them for a modification. Instead of seeking other alternatives to foreclosure, Plaintiff relied on Defendant's promise to review her file for a loan modification and not foreclose. Relying on Defendant's representations, Plaintiff refrained from pursuing other means to save her home.

Defendant knowingly made false representations of material facts for the purpose of inducing the Plaintiff to rely on such representations, when Defendant had no intention of fulfilling its promises. Plaintiff did, in fact, justifiably rely on Defendant's misrepresentations. Plaintiff was damaged by her reliance on Defendant's promises in that she continued to submit loan application documents that went nowhere, instead of seeking third-party financing, sale, short-sale, bankruptcy reorganization, or other alternatives to foreclosure. Plaintiff took these actions in reliance on Defendant's misrepresentation that they would not foreclose.

Therefore, Plaintiffs' cause of action is proper and Defendant's Motion to Dismiss should be denied.

## Plaintiffs Have a Valid Claim for Wrongful Foreclosure

## Based on Statutory Violations

The Perata Mortgage Relief Act, codified as Civil Code §§ 2923.5 and 2923.6, governs any residential mortgage executed between January 1, 2003 and December 31, 2007. Among the protections the statute contains for borrowers in foreclosure is a mandatory notification, meeting, and consultation process that must be made available to the borrower by the foreclosing lender, mortgage, trustee, beneficiary, or authorized agent, prior to filing a Notice of Default under Civil Code § 2924. The statute states that it is "modifying the foreclosure process to require

mortgagees, beneficiaries, or authorized agents to contact borrowers and explore options that could avoid foreclosure."

Civil Code § 2923.5 also contains additional requirements lenders, mortgagees, trustees, beneficiaries, or authorized agents must comply with prior to filing a Notice of Default pursuant to California Civil Code § 2924.  The section requires the Lender to contact the borrower in person or by telephone in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure.  During the initial contact, the Lender shall advise the borrower that he or she has the right to request a subsequent meeting and, if requested, the mortgagee, beneficiary, or authorized agent shall schedule the meeting to occur within 14 days. The assessment of the borrower's financial situation and discussion of options may occur during the first contact, or at the subsequent meeting scheduled for that purpose.  In either case, the borrower shall be provided the toll-free telephone number made available by the United States Department of Housing and Urban Development (HUD) to find a HUD-certified housing counseling agency.  Any meeting may occur telephonically.  Civil Code § 2923.5 further requires that the Lender may not file a Notice of Default until 30 days after this contact and good faith discussion takes place.

Furthermore, Civil Code § 2923.5 mandates that a good faith discussion take place regarding the borrower's financial situation and an actual exploration into the borrowers' options to stay in their home.  Section 2923.5 requires a discussion concerning the possibility of avoiding foreclosure or modifying the current mortgage, so in these times, the borrower could actually explore the possibilities of avoiding foreclosure and not receive merely a cursory phone call assessing the borrower's financial situation.

In addition, Civil Code § 2923.5(c) provides that if a mortgagee, trustee, beneficiary, or authorized agent, has filed a Notice of Default prior to the enactment of the Section 2923.5, then the mortgagee, trustee, beneficiary, or authorized agents, must, in the Notice of Sale, include a Declaration that states:  (1) the borrower was contacted to assess the borrower's financial situation and to explore options for the borrower to avoid foreclosure, or; (2) list the efforts made, if any to contact the borrower in the event the contact was made; and this declaration must comply with California Code of Civil Procedure § 2015.

Section 2923.5 contains an exemption for loans that are serviced by mortgage loan servicers if the servicer has obtained a current and valid order of exemption pursuant to section 2923.53.  There is also an exemption for loans made, purchased, or serviced by a California state or local public housing agency or authority, and for loans that are collateral for securities purchased by a local public housing agency or authority.  In order to qualify for the exemption under section 2923.53, the mortgage loan servicer must have implemented a comprehensive loan modification program that includes some combination of: an interest rate reduction for a fixed term for at least five years, an extension of the amortization period of the loan term to no more than 40 years from the original date of the loan, deferral of some portion of the principal amount of the unpaid principal balance until maturity of the loan, **reduction of the principal amount,** compliance with a federally mandated loan modification program, and other factors that the commissioner determines are appropriate, and offered some type of assistance in connection with the program if requested by the borrower.

Although Defendant BAC stated to Plaintiffs that it was negotiating a loan modification in good faith and would explore all available foreclosure alternative options with Plaintiff, it nonetheless proceeded to take Plaintiffs home in a Trustee's Sale.  Defendant BAC became

contractually bound to properly and in good faith evaluate Plaintiffs' financial circumstances according to Program Guidelines, and offer Plaintiffs a loan modification that complied with the Program Guidelines after they completed the TPP, and the statutory violations stated above were not waived or excused.  Defendant BAC failed to comply with the law.

Therefore, Plaintiffs' cause of action is proper and Defendant's Motion to Dismiss should be denied.

### Plaintiffs Have a Valid Claim for Promissory Estoppel

Promissory Estoppel affords a Plaintiff a remedy even where the Defendant received no consideration for its promises.

Where a party acts to its detriment in reliance on a promise, promissory estoppels affords that party a remedy, even where the promisor received no consideration for its promise.  See Wade v. Markwell & Co., (1953) 118 Cal. App.2d 410, 420.  The vital principle is that he who by his language or conduct leads another to do what he would not otherwise have done shall not subject such person to loss or injury by disappointing the expectations upon which he acted.  See Garcia, 107 Cal. Rptr. 3d at 692.

Because Defendant accepted a negotiated monthly mortgage payment, which waived any lump sum payment, Plaintiff were led to believe that they could rely on the monthly trial plan payments as a shield protecting them from foreclosure.  Defendant should be estopped from denying the existence of the agreement because after executing the agreement, Plaintiff subsequently returned the fully executed written agreement and made the first payment, which Defendant accepted. Then, after indicating their acknowledgment of the agreement, Defendant refused to continue performance under the agreement. Defendant's promises were clear and unambiguous and Plaintiff acted in accordance with the clear and unambiguous promises.

1    Therefore, Plaintiffs' cause of action is proper and Defendant's Motion to Dismiss should

2    be denied.

3    ## PLAINTIFFS' CLAIMS FOR NEGLIGENCE AND NEGLIGENT

4    ## MISREPRESENTATION ARE VALID

5
6    It is true that courts have held that in the standard lender/borrower relationship, a duty of

7    care is not necessarily created.  As the court held in *Nymark v. Heart Federal Savings & Loan*

8    *Association.*, 231 Cal. App. 3d 1089, 1095 (1991) "[A]s a general rule, a financial institution

9    owes no duty of care to a borrower when the institution's involvement in the loan transaction

10   does not exceed the scope of its conventional role as a mere lender of money."

11
12   However, the Nymark court simply found that a duty was not owed under the facts in that

13   case after analyzing them pursuant to the six part test established in *Biakanja v. Irving, 49 Cal2d*

14   *647, 122 P.2d 294.*  This test balances six non-exhaustive factors: (1) the extent to which the

15   transaction was intended to affect the Plaintiff; (2) the foreseeability of harm to him; (3) the

16   degree of certainty that the Plaintiff suffered injury; (4) the closeness of the connection between

17   the Defendant's conduct and the injury suffered; (5) the moral blame attached to the Defendant's

18   conduct; and (6) the policy of preventing future harm. *Biakanja, 49 Cal. 2d at 650.*

19
20   When applied to Defendant, unlike *Nymark*, the factors clearly weigh in favor of the

21   finding that Defendant owed Plaintiff a duty of care. See *Garcia v. Ocwen Loan Servicing, LLC*,

22   2010 WL 1881098 (N.D. Cal.) (Denying motion to dismiss negligence claim against loan

23   servicer and holding that servicer owed borrower a duty of care).  Next, there was a clear

24   foreseeability of harm to Plaintiff as he could lose his home, i.e., actual injury.  Moreover, this

25   was a direct result of the Defendant's breach of their duty of care.  Additionally, through

26
27
28

legislation, California has established a policy of preventing unnecessary and wrongful

foreclosures.

In the case at bar, we are far from Defendant being a "mere lender of money."

Defendants created a duty of care to Plaintiff when they stepped into the shoes of promising to

provide mortgage assistance under their "traditional in house options" and/or HAMP.  As stated

in the complaint, several different employees from Defendant gave Plaintiff either wrong or

conflicting directions as to the status of his loan modification.  The facts will further show that

Plaintiff made several submissions of his application for assistance because Defendant

employees kept claiming, at one time or another that they did not have a complete application "to

review."

Plaintiff argues that when Defendant held itself out as a willing rescuer to save his home,

it created a duty of care and was thereby obligated not to act negligently or intentionally toward

Plaintiff.  Even if it were "merely a lender," it would have an affirmative duty to not lie, confuse,

or frighten Plaintiff.

Therefore, Plaintiffs' cause of action is proper and Defendant's Motion to Dismiss should

be denied.

## PLAINTIFFS' CLAIMS FOR VIOLATION OF

## BUSINESS AND PROFESSIONS CODE ARE VALID

No California appellate case has addressed the application of California Business and

Professions (B & P) Code Section 17200, et seq., to the business practices of subprime mortgage

lenders and servicers at issue here.  However, the California State courts have repeatedly held

that all that is necessary to establish a violation of B&P 17200 et seq., is to show that the

Defendants are a business engaged in acts or practices that are unlawful, fraudulent or unfair.

Thus, "there are three varieties of unfair competition; practices which are unlawful, unfair or fraudulent." *Daugherty v. American Honda Motor Co., Inc.* (2006) 144 Cal. App. 4th 824, 837. The unlawful practices prohibited by the statute are any practices forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court made.  Saunders vs. Superior Court (1994) 27 Cal. App. 4th 832, 838-39.  It is not necessary that the predicated law provide for private civil enforcement.  "Unfair," as used in the statue, simply means any practice whose harm to the victim outweighs its benefits.  "Fraudulent," as used in the statute, does not refer to the common law tort of fraud but only requires a showing that members of the public are likely to be deceived.  Bank of the West v. Superior Court (1992) 2 Cal. 4th 1254, 1267.

The "unfair" prong of section 17200 intentionally provides courts with broad discretion to prohibit new schemes to defraud.  Motors, Inc. v. Times-Mirror Co. (1980) 102 Cal. App. 3d, 735, 740.  An unlawful business practice or act is "unfair" when it "offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumer.  People v. Casa Blanca Convalescent Homes, Inc. (1984) 159 Cal. App. 3d 509, 530.  "[T]he court must weigh the utility of the Defendant's conduct against the gravity of the harm to the alleged victim."  State Farm Fire & Casualty Co. v. Superior Court (1996) 45 Cal. App. 4th 1093, 1104.

Therefore, Plaintiffs' causes of action are proper and Defendant's Motion to Dismiss should be denied.

///

///

///

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS

### III. CONCLUSION

For all of the above reasons, Plaintiff respectfully requests that this Court deny the Defendant's Motion to Dismiss the Complaint.  Alternatively, if the Court finds that one or more of the Plaintiffs' Causes of Action is not properly pleaded, Plaintiff requests leave of Court to amend his complaint.

Dated:    November 19, 2013

_____

ART HOOMIRATANA
Attorney for Plaintiffs

18

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS

1

## PROOF OF SERVICE

2

Keni Meyer v.  Wells Fargo Bank, National Association; et al.

3

*Case No.: 3:13-cv-03727-NC*

4

I, Ernesto Bernal, declare as follow:

5

6

I am employed in the County of Los Angeles, State of California.  I am over the age of  eighteen (18)

7

and not a party to the within action. My business address is: 750 East Green Street, Suite 333, Pasadena,

California 91101.  I am readily familiar with the practices of the Law Offices of Art Hoomiratana, for

8

collection and processing of correspondence for mailing with the United States Postal Service.  Such

9

correspondence is deposited with the United States Postal Service the same day in the ordinary course of

10

business.  I am aware that on motion of party served, service is presumed invalid if postal cancellation

11

date or postage meter date is more than one day after date of deposit for mailing in affidavit.

12

On **October 20, 2013** I served the within **PLAINTIFF'S OPPOSITION TO MOTION TO DIMISS**

13

on all interested parties in this action as follow:

14

**Elizabeth Christine Hehir, Esq.**

15

**Robert Arthur Bailey, Esq.**

Anglin Flewelling Rasmussen Campbell and Trytten, LLP

16

199 South Los Robles Avenue, Suite 600

17

Pasadena, CA 91101

Tel: 626-535-1900

18

Fax: 626-577-7764

19

20

[ X ]    by placing [  ] [  ] a true copy thereof enclosed in sealed envelope(s) addressed as follows:

21

**Attorney for:**

22

[ X ]    (BY MAIL SERVICE) I placed such envelope(s) for collection to be mailed on this date

23

following ordinary business practices.

24

[  ]    (BY PERSONAL SERVICE) I caused personal delivery by ATTORNEY SERVICE of said

document(s) to the offices of the addressee(s) as set forth on the attached service list.

25

26

[  ]    (BY ELECTRONIC MAIL) I caused each such document to be transmitted electronically to the

parties at the e-mail address indicated.  To the best of my knowledge, the transmission was reported as

27

complete, and no error was reported that the electronic transmission was not completed.

28

[  ]    (VIA FACSIMILE) By use of facsimile machine telephone number (888) 848-4570, I faxed a

true copy to the addressee(s) listed above at the facsimile number(s) noted after the party's address.  The

transmission was reported as complete and without error.  The attached transmission report, which sets forth the date and time for the transmission, was properly issued by the transmitting facsimile machine.

[  ]     (BY OVERNITE – NEXT DAY DELIVERY) I placed true and correct copies thereof enclosed in a package designated by FedEX with delivery fees provided for.

[ X ]    (STATE) I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.


Executed on November 20, 2013, at Pasadena, California.


Ernesto Bernal